1
2
3
4
5
6
7
8

<div style="text-align:center">

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

</div>

9  PENPOWER TECHNOLOGY LTD., and    ) Case No. 07-3621 SC
   PENPOWER INC.,                   )
10                                  )
            Plaintiffs,             ) ORDER GRANTING IN
11                                  ) PART AND DENYING IN
       v.                           ) PART PLAINTIFFS'
12                                  ) MOTION FOR DEFAULT
   S.P.C. TECHNOLOGY, GLZ SERVICE   ) JUDGMENT
13 INC., PC MOBILE STATION.COM CORP.,)
   JNB GROUP INC., HERBET LIN d.b.a. )
14 ALL TECH COMPUTER, IVY LIN d.b.a. )
   IVY COMPUTERS, INC., ELITE NETWORK)
15 COMPUTER, INC., ANDY CHEN d.b.a.  )
   DRIFTING COMPUTER, JACK WANG d.b.a.)
16 SHENZHOU COMPUTER MALL, INC., TONY )
   CHANG d.b.a. AZIANEAGLE, AND NEW  )
17 YORK COMPUTER SUPPLY, INC.,       )
                                     )
18         Defendants.               )
                                     )
19 _____  )

20 **I.    INTRODUCTION**

21      The present matter comes before the Court on the Motion for

22 Default Judgment ("Motion") filed by the plaintiffs Penpower

23 Technology Ltd., and Penpower Inc. (collectively "Plaintiffs").

24 Docket No. 23.  Pursuant to Federal Rule of Civil Procedure 55(a),

25 the Clerk of the Court entered default against all Defendants save

26 S.P.C. Technology and GLZ Service, Inc.  Docket Nos. 13, 22.  Both

27 of these Defendants, however, were voluntarily dismissed.  Docket

28 Nos. 5, 14.  After reviewing Plaintiffs' Motion and supporting

<div style="writing-mode: vertical">

**United States District Court**
For the Northern District of California

</div>

1  declarations, the Court determined that Plaintiffs had submitted

2  insufficient evidence to support their claims for damages.  The

3  Court therefore ordered Plaintiffs to submit additional evidence.

4  See Order Re Plaintiffs' Motion for Default Judgment ("April 15

5  Order"), Docket No. 27.  Plaintiffs have since submitted

6  additional evidence in the form of three declarations and various

7  exhibits.  Docket Nos. 28, 29, 30.  After reviewing this evidence,

8  the Court, for the following reasons, GRANTS IN PART and DENIES IN

9  PART Plaintiffs' Motion for Default Judgment.

10

11  **II.  BACKGROUND**

12      Plaintiff Penpower Technology, Ltd., is a Taiwanese

13  corporation and Plaintiff Penpower, Inc., is a California-based

14  corporation owned by Penpower Technology, Ltd.  Compl., Docket No.

15  1, ¶¶ 1, 2.  Plaintiffs are "actively involved in the research,

16  development, manufacture and sale of multilingual handwritten

17  recognition, optical character recognition, voice recognition,

18  biometric recognition, computer handwriting software, and the

19  peripheral parts and products."  Id. ¶ 1.  Relevant to the present

20  action, Plaintiffs develop and manufacture Chinese-to-English

21  handwriting recognition software and hardware.  First Shih Decl. ¶

22  8.[1]  Plaintiffs are the registered owners of the trademark

23  "Penpower."  Id. ¶ 6.  This trademark is registered with the

24  _____

25      [1]  Debra Shih is the president of Penpower Ltd. and Penpower
    Inc.  She submitted declarations in support of Plaintiffs' Motion

26  for Default Judgment and in response to the Court's request for
    further evidence.  Docket Nos. 23, 28, 29.  The Court shall refer

27  to these declarations as the First, Second, and Third Shih
    Declarations, respectively.

28                                        2

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  United States Patent and Trademark Office under the registration

2  numbers 2851603 and 2975420.  Id.  Plaintiffs are also the authors

3  of Penpower Handwriting Recognition Software and Penpower Jr.

4  Handwriting Recognition Software.  Id.

5      Plaintiffs allege that Defendants have sold and are

6  continuing to sell counterfeit products and products incorporating

7  Penpower handwriting recognition software.  Plaintiffs also allege

8  that Defendants have reverse engineered and unlawfully

9  incorporated identical or substantially similar underlying logic,

10  structure, organization and sequencing of Penpower software.

11      Plaintiffs' Complaint alleges the following causes of action:

12  (1) trademark infringement; (2) unfair competition and false

13  designation of origin; (3) violation of trademark counterfeiting

14  act; (4) unfair competition, deceptive advertising and unfair

15  trade practices under California law; (5) dilution and injury to

16  business reputation under California law; (6) copyright

17  infringement; and (7) unfair, unlawful and fraudulent business

18  practices under California law.  See Compl.  In their Motion,

19  Plaintiffs seek an injunction preventing Defendants from

20  infringing Plaintiffs' trademarks and copyrights; an injunction

21  ordering Defendants to deliver up for destruction all infringing

22  products; and an injunction ordering Defendants to issue a recall

23  over infringing materials; treble damages in the sum of

24  $677,075.37; statutory damages of $100,000 for willful copyright

25  infringement; punitive damages of $500,000; attorneys' fees of

26  $16,497; and costs of $2,005.

27  ///

28
                                        3

### III. <u>LEGAL STANDARD</u>

After entry of default, the Court may enter a default judgment. Fed. R. Civ. P. 55(b). "However, entry of default does not automatically entitle the non-defaulting party to entry of a default judgment regardless of the fact that the effect of entry of a default is to deem allegations admitted." <u>In re Villegas</u>, 132 B.R. 742, 746 (9th Cir. BAP 1991). Rather, "the decision to enter a default judgment is discretionary." <u>Alan Neuman Prods., Inc. v. Albright</u>, 862 F.2d 1388, 1392 (9th Cir. 1988). First, the Court must "assess the adequacy of service of process on the party against whom default is requested." <u>Bd. of Trs. of the N. Cal. Sheet Metal Workers v. Peters</u>, No. C-00-0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001). Once the Court determines that service was sufficient, it may consider the following factors when exercising its discretion to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Eitel v. McCool</u>, 782 F.2d 1470, 1471-72 (9th Cir. 1986).


### IV. <u>DISCUSSION</u>

#### A. <u>Service of Process</u>

Service of process against all Defendants was adequate.

4

**United States District Court**
For the Northern District of California

1   Federal Rule of Civil Procedure 4(e) allows service upon an

2   individual by personally delivering to the individual the summons

3   and complaint.  Rule 4(h) provides the standards for service upon

4   corporations, associations, or partnerships.  Copies of the

5   summons and complaint were properly served on all Defendants.  <u>See</u>

6   Docket Nos. 6, 7, 8, 9, 10, 11, 12, 17, 17-3.

7        **B.   <u>Merits of Motion</u>**

8        "The general rule of law is that upon default the factual

9   allegations of the complaint, except those relating to the amount

10  of damages, will be taken as true."  <u>Geddes v. United Fin. Group</u>,

11  559 F.2d 557, 560 (9th Cir. 1977).  For the following reasons, the

12  <u>Eitel</u> factors favor default judgment in four of Plaintiffs' seven

13  causes of action.

14       **1.   Prejudice**

15       Accepting the allegations in the Complaint as true,

16  Plaintiffs would be prejudiced absent entry of default judgment.

17  If Defendants continue to sell counterfeit products and products

18  incorporating Penpower handwriting recognition software or

19  unlawfully incorporate identical or substantially similar logic,

20  structure, organization, and sequencing of Penpower software into

21  their products, Plaintiffs will likely be without other recourse

22  or recovery.  Such a situation qualifies as prejudice.  <u>See</u>

23  <u>PepsiCo, Inc. v. Cal. Sec. Cans</u>, 238 F. Supp. 2d 1172, 1177 (C.D.

24  Cal. 2002).

25       **2.   Merits of Plaintiffs' Substantive Claims and**

26            **Sufficiency of Complaint**

27       Plaintiffs assert the following claims: (1) trademark

28                              5

infringement in violation of 15 U.S.C. §1114(1); (2) unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); (3) trademark counterfeiting act in violation of 15 U.S.C. § 1116; (4) unfair competition, deceptive advertising and unfair trade practices under California Business and Professions Code § 17200 et seq.; (5) dilution and injury to business reputation under California Business and Professions Code § 14330; (6) copyright infringement in violation of 17 U.S.C. § 101 et seq.; and (7) unfair, unlawful and fraudulent business practices under California Business and Professions Code § 17200 et seq.  The Court addresses each in turn.

To prevail on their trademark infringement claim under 15 U.S.C. § 1114(1), Plaintiffs must demonstrate that Defendants used in commerce any reproductions or counterfeits of a registered mark or reproduced or colorably imitated a registered mark in such a manner as to likely cause confusion or to deceive.  15 U.S.C. § 1114(1).  Plaintiffs' Complaint properly alleges the elements of this cause of action.  Compl. ¶¶ 18-21.  Accepting the allegations in the Complaint as true, Plaintiffs' claim has merit.

To prevail on their unfair competition and false designation of origin claim under 15 U.S.C. § 1125(a), Plaintiffs must show that Defendants used in commerce a word, term, name, symbol, or device or a false designation of origin that is likely to cause confusion.  15 U.S.C. § 1125(a).  In the present case, Plaintiffs properly allege that Defendants have adopted confusingly similar marks, characters, packaging, and graphics for their products.  These allegations are adequately pled.

United States District Court
For the Northern District of California

6

**United States District Court**
For the Northern District of California

1       Plaintiffs' third cause of action is brought under the

2   Trademark Counterfeiting Act, 15 U.S.C. § 1116.  Section 1116

3   "vests the district court with the power to grant injunctions

4   according to principles of equity and upon such terms as the court

5   may deem reasonable, to prevent the violation of any right of the

6   trademark owner."  Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d

7   1126, 1137 (9th Cir. 2006).  In particular, § 1116 states that a

8   court may grant an injunction "according to the principles of

9   equity and upon such terms as the court may deem reasonable[] to

10  prevent the violation of any right of the registrant of a mark

11  registered in the Patent and Trademark Office or to prevent

12  violation under subsection (a), (c), or (d) of section 1125."  15

13  U.S.C. §1116(a).

14      It is unclear to the Court whether Plaintiffs seek to assert

15  an independent claim under § 1116 or whether Plaintiffs included §

16  1116 because they seek injunctive relief.  At least one Circuit

17  has indicated that § 1116 does not provide an independent cause of

18  action.  See Gibraltar, P.R., Inc. v. Otoki Group, Inc., 104 F.3d

19  616, 618 (4th Cir. 1997) (holding that a violation of federal law

20  is a necessary predicate for claiming the remedies, including

21  remedies available under 15 U.S.C. § 1116(a)).  Nonetheless,

22  Plaintiffs' second cause of action alleges violations of § 1125.

23  The Court therefore construes Plaintiffs' third cause of action as

24  a request for an injunction pursuant to Plaintiffs' § 1125 claim.

25  The Court discusses the appropriate damages and remedies,

26  including injunctive relief, below.

27      Plaintiffs' fourth cause of action alleges unfair

28

7

competition, deceptive advertising and unfair trade practices in violation of California Business and Professions Code § 17200 <u>et seq.</u> "California's unfair competition statute prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" <u>In re Pomona Valley Med. Group</u>, 476 F.3d 665, 674 (9th Cir. 2007) (citing Cal. Bus. & Prof. Code § 17200 <u>et seq.</u>). "This tripartite test is disjunctive and the plaintiff need only allege one of the three theories to properly plead a claim under section 17200." <u>Med. Instrument Dev. Lab. v. Alcon Lab.</u>, CV 05-1138, 2005 WL 1926673, at *5 (N.D. Cal. Aug. 10, 2005). Although this claim is properly pled, it is, as discussed below, preempted by Plaintiffs' copyright claim.

Plaintiffs' fifth cause of action alleges dilution and injury to business reputation in violation of California Business and Professions Code § 14330. Section 14330 was repealed by statute, effective January 1, 2008. <u>See</u> Stats. 2007, c. 711 (A.B. 1484), § 1. "The repeal of a statute creating a penalty, running either to an individual or the state, at any time before final judgment, extinguishes the right to recover the penalty." <u>People v. One 1986 Toyota Pickup</u>, 31 Cal. App. 4th 254, 262 (Ct. App. 1995).

Plaintiffs' sixth cause of action alleges copyright infringement under 17 U.S.C. § 101 <u>et seq.</u> Plaintiffs must satisfy two requirements to present a prima facie case of copyright infringement: ownership of a valid copyright and violation of at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. <u>A&M Records, Inc. v. Napster, Inc.</u>, 239 F.3d 1004, 1013 (9th Cir. 2001). Although far from

8

United States District Court

For the Northern District of California

clear, it appears that Plaintiffs' Complaint alleges violations of §§ 106(1) or (2). Section 106(1) grants the owner of a copyright exclusive rights to reproduce the copyrighted work. 17 U.S.C. § 106(1). Section 106(2) grants the owner of a copyright exclusive rights to prepare derivative works based upon the copyrighted work. Id. § 106(2).

The Court must first determine whether Plaintiffs have alleged ownership of the copyright. Plaintiffs' Complaint states that Plaintiffs "have filed [an] application for registration with the United States Copyright Office under the In-Process No. 155860333." Compl. ¶ 34. This statement indicates that Plaintiffs do not yet own a valid copyright. This, however, does not end the inquiry. 17 U.S.C. § 411(a) states, in part: "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." (emphasis added). This language has generated a split between Circuits as well as a split within the California district courts.[2]

Certain courts have found that a plaintiff may bring a copyright suit while his or her application for copyright registration is pending before the Copyright office. See Gable-Leigh v. N. Am. Miss, No. 01-1019, 2001 WL 521695, at *4 (C.D. Cal. April 13, 2001) (finding that the "'registration requirement' set forth in § 411 . . . may be satisfied by adducing evidence

---

[2]  The Ninth Circuit has yet to weigh in on this issue.

9

**United States District Court**
For the Northern District of California

that the plaintiff has deposited the work in question and paid the registration fee, and that the Copyright Office has received plaintiff's application").  Other courts have determined that a copyright action may not be brought until the issuance of a registration certificate.  <u>See</u>, <u>e.g.</u>, <u>Loree Rodkin Mgmt. Corp. v. Ross-Simons, Inc.</u>, 315 F. Supp. 2d 1053, 1054-55 (C.D. Cal. 2004).  Even within the Northern District, courts have reached different conclusions.  <u>Compare</u> <u>Tabra, Inc. v. Treasures de Paradise Designs, Inc.</u>, No. 90-0155, 1992 WL 73463, at *1 (N.D. Cal. 1992), <u>with</u> <u>Brush Creek Media, Inc. v. Boujaklian</u>, No. 02-3491, 2002 WL 1906620, at *1 (N.D. Cal. Aug. 19, 2002).

The Court is convinced that the plain language of § 411 permits a plaintiff to initiate a copyright infringement claim before the actual issuance of a registration certificate.  Section 411 unambiguously states that after "preregistration" of a copyright, a copyright action may be filed.  Plaintiffs allege that they "have filed [an] application for registration with the United States Copyright Office under the In-Process No. 155860333."  Compl. ¶ 34.  Such an action is equivalent to "preregistration."  Plaintiffs have therefore sufficiently pled a copyright infringement action.

The Court must next decide whether Plaintiffs' copyright action preempts Plaintiffs' claims for unfair competition under California Business and Professions Code § 17200 <u>et</u> <u>seq.</u>  "Federal . . . copyright laws limit the states' ability to regulate unfair competition."  <u>Summit Mach. Tool Mfg. Corp. v. Victor CNC Sys., Inc. ("Summit")</u>, 7 F.3d 1434, 1439 (9th Cir. 1993).  "A state law

cause of action is preempted by the Copyright Act if two elements are present."  Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998).  "First, the rights that a plaintiff asserts under state law must be rights that are equivalent to those protected by the Copyright Act."  Id. (internal quotation marks omitted).  "Second, the work involved must fall within the subject matter of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103."  Id. (internal quotation marks omitted).

### i.    Fist Element:  Equivalent Rights

"Unfair competition law in California prohibits any unlawful, unfair or fraudulent business practices."  Kodadek, 152 F.3d at 1212 (internal quotation marks omitted).  "The myriad branches of California's unfair competition law involve different elements and raise different issues."  Summit, 7 F.3d at 1440.  "[T]he breadth and analytical vagueness of [California's] unfair competition law complicates the preemption analysis greatly."  Id. (internal quotation marks omitted; alteration in original).

"Preemption analysis involves determining whether the state law claim contains an element not shared by the federal law; an element which changes the nature of the action so that it is qualitatively different from a copyright infringement claim."  Id. at 1439-40 (emphasis in original, internal quotation marks omitted).  "This process has been described as a fact-specific inquiry, looking [at] whether the sate law claims as they are asserted are 'equivalent' to a federal copyright claim."  Salim v. Lee, 202 F. Supp. 2d 1122, 1125 (C.D. Cal. 2002).

Both of Plaintiffs' § 17200 claims allege unfair, unlawful,

United States District Court

For the Northern District of California

1    and fraudulent business practices.  Specifically, Plaintiffs'

2    fourth cause of action alleges that Defendants' violations are

3    causing "substantial injury, loss and damage to its ownership

4    rights," Compl. ¶ 30, and Plaintiffs' seventh cause of action

5    alleges "loss of customers, dilution of goodwill, confusion of

6    potential customers, injury to their reputation, and diminution in

7    value of their property rights."  Compl. ¶ 47.  Plaintiffs'

8    copyright infringement claim alleges that Defendants have copied

9    Plaintiffs' protected materials and marketed and sold these

10   materials as Defendants' own.  See Compl. ¶¶ 33-44.

11       The Court can discern no "qualitative" difference between the

12   § 17200 claims and the copyright infringement claim.  See Kodadek,

13   152 F.3d at 1213 (finding plaintiff's § 17200 claim preempted by

14   plaintiff's copyright infringement claim).  It therefore appears

15   that Plaintiffs' § 17200 claims are "based on rights equivalent to

16   those protected by the federal copyright laws."  Id.

17           **ii.  Second Element: Copyright Subject Matter**

18       Plaintiffs seek to protect their Penpower software.  Computer

19   software is a proper subject matter for copyright protection.

20   See, e.g., Apple Computer, Inc. v. Formula Int'l Inc., 725 F.2d

21   521, 525 (9th Cir. 1984).

22       As both prongs of the preemption analysis are met,

23   Plaintiffs' § 17200 causes of action are preempted.  See Kodadek,

24   152 F.3d at 1213; see also 1 Nimmer, § 1.01[B][1][e] at 1-24, n.

25   110 (stating that if B is selling B's products and representing to

26   the public that they are B's products, a claim by A that B's

27   products replicate A's is a disguised copyright infringement claim

28                                 12

**United States District Court**
For the Northern District of California

1    and is preempted).

2    Plaintiffs' seventh cause of action is for unfair, unlawful,

3    and fraudulent business practices in violation of California

4    Business and Professions Code § 17200.  For the reasons just

5    discussed, this claim is preempted by Plaintiffs' copyright claim.

6    To summarize, the Court finds that the merits of Plaintiffs'

7    claims and the sufficiency of the Complaint favor default judgment

8    for Plaintiffs' first, second, and sixth causes of action and

9    militate against default judgment for Plaintiffs' fifth cause of

10   action.  Plaintiffs' fourth and seventh causes of action under §

11   17200 are preempted.  Plaintiffs' third cause of action, for an

12   injunction pursuant to 15 U.S.C. § 1116, is discussed below.

13             **3.    Amount of Money at Stake**

14   The sum of money at stake weighs against default judgment.

15   Plaintiffs seek treble damages in the sum of $677,075.37, punitive

16   damages of $500,000, statutory damages of $100,000 for willful

17   copyright infringement, attorneys' fees of $16,497 and costs of

18   $2,005.

19   Plaintiffs are unable to articulate a concrete basis for

20   their non-statutory monetary damages.  Plaintiffs themselves

21   concede as much, stating, "it is difficult to pinpoint actual loss

22   in a specific year due to defendants' infringement activities and

23   sales of counterfeit products."  Compl. ¶ 4.  To compensate for

24   this difficulty, Plaintiffs have come up with "three different

25   approaches to substantiate [their] damages claims."  Id.  These

26   approaches are for damages based on relative business growth rate,

27   damages based on differences in income statements, and damages

28

**United States District Court**
For the Northern District of California

based on forecasted versus actual sales. <u>Id.</u> Each approach yields a different amount of damages, ranging from $190,790 for the forecasted versus actual sales theory, to $309,119 for the damages based on income statements. In essence, Plaintiffs present all three theories with the hope that the Court will pick the one it finds most attractive.

Besides the fact that none of the theories presents a particularly compelling method for determining damages, the fact that Plaintiffs themselves are unable to determine their damages is proof that the damages are too speculative.

Plaintiffs' request for $500,000 in punitive and exemplary damages is equally speculative. Accordingly, this <u>Eitel</u> factor weighs against default judgment.

**4.    Possibility of a Dispute Concerning Material Facts**

Upon entry of default, all well-pleaded facts in the Complaint are taken as true. <u>Geddes</u>, 559 F.2d at 560. This factor weighs in favor of default judgment.

**5.    Whether Default Was Due to Excusable Neglect**

As noted above, Defendants were all properly served. Although none of the Defendants has made an appearance or participated in any manner in this action, the Court finds that the possibility that default resulted from excusable neglect of all Defendants is remote. This factor therefore weighs in favor of default judgment.

**6.    Policy for Deciding on the Merits**

"Cases should be decided on the merits whenever possible." <u>Eitel</u>, 782 F.2d at 1472. The existence of Federal Rule of Civil

14

**United States District Court**
For the Northern District of California

Procedure 55(b), however, indicates that this preference alone is not dispositive. Where, as here, defendants fail to respond to a Complaint, a decision on the merits is impractical, if not impossible. Ultimately, the preference to decide cases on the merits does not preclude a court from granting default judgment. See, e.g., Pepsico, 238 F. Supp. 2d at 1177.

### 7. Summary

Taken together, the Eitel factors favor default judgment on Plaintiffs' first cause of action for trademark infringement in violation of 15 U.S.C. §1114(1); second cause of action for unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a); and sixth cause of action for copyright infringement in violation of 17 U.S.C. § 101 et seq.

The Eitel factors militate against default judgment on Plaintiffs' fifth cause of action for dilution and injury to business reputation under California Business and Professions Code § 14330. Plaintiffs' fourth and seventh causes of action for unfair, unlawful, and fraudulent business practices under California Business and Professions Code § 17200 et seq., are preempted. Plaintiffs' third cause of action, for injunctive relief under 15 U.S.C. § 1116, is discussed below.

### C. Relief Sought

Plaintiffs seek monetary and statutory damages, as well as injunctive relief and attorneys' fees and costs.

### 1. Damages

"The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount

15

**United States District Court**
For the Northern District of California

of damages, will be taken as true." <u>Geddes</u>, 559 F.2d at 560.

Plaintiffs seek $500,000 in punitive damages, and treble damages

of approximately $600,000.  For the reasons stated in section

IV.B.3., <u>supra</u>, the Court finds that the monetary damages sought

by Plaintiffs are too speculative.  Without a concrete method for

determining provable damages, a monetary award is not supportable.

<u>See</u> <u>Geddes</u>, 559 F.2d at 560.  This conclusion is only strengthened

by the fact that the Court has already provided Plaintiffs with

the opportunity to submit additional evidence that would

demonstrate their monetary damages claims.  <u>See</u> April 15 Order.

Plaintiffs also seek statutory damages in the amount of

$100,000 "for each copyrighted work infringed by Defendants."

Compl. at 10.  17 U.S.C. § 504(c)(2) states: "In a case where the

copyright owner sustains the burden of proving, and the court

finds, that infringement was committed willfully, the court in its

discretion may increase the award of statutory damages to a sum of

not more than $150,000."

The only indication that Defendants' infringements were

willful comes from Plaintiffs' Complaint, which alleges that

"Plaintiffs have requested Defendants to cease and desist from

their acts of trademark infringement and have given Defendants

actual notice of Plaintiffs' registration, but Defendants have

refused to cease such acts." Compl. ¶ 20.  Although the Court

must generally accept the factual allegations of the Complaint as

true, allegations relating to the amount of damages must be

supported by some evidence.  <u>See</u> <u>Geddes</u>, 559 F.2d at 560.  As

there is no other evidence, aside from the factual allegation in

16

1    the Complaint, that Defendants acted willfully, the Court cannot

2    find that such was the case.

3                    **2.    Injunctive Relief**

4        Plaintiffs seek injunctive relief pursuant to 15 U.S.C. §

5    1116(a).  "A plaintiff is not automatically entitled to an

6    injunction simply because it proves its affirmative claims."

7    Pepsico, 238 F. Supp. 2d at 1177.  Nonetheless, 15 U.S.C. §

8    1116(a) entitles a trademark owner to an injunction if the owner's

9    rights are being violated.  Playboy Enters. Int'l, Inc. v. Muller,

10   314 F. Supp. 2d 1037, 1043 (D. Nev. 2004); see also Century 21

11   Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir.

12   1988) (stating "[i]njunctive relief is the remedy of choice for

13   trademark and unfair competition cases, since there is no adequate

14   remedy at law for the injury caused by a defendant's continuing

15   infringement").  In light of the allegations presented by

16   Plaintiffs', the Court finds that injunctive relief is appropriate

17   and GRANTS Plaintiffs' request for a permanent injunction

18   enjoining Defendants from using Plaintiffs' trademarks on

19   counterfeit products or from otherwise infringing on Plaintiffs'

20   trademarks or copyright.

21                **3.    Attorney's Fees and Costs**

22       Plaintiffs seek attorneys' fees of $16,497 and costs of

23   $2,005.  "The Copyright Act of 1976, 17 U.S.C. § 505, provides in

24   relevant part that in any copyright infringement action 'the court

25   may . . . award a reasonable attorney's fee to the prevailing

26   party as part of the costs.'"  Fogerty v. Fantasy, Inc., 510 U.S.

27   517, 519 (1994).

28

United States District Court
For the Northern District of California

**United States District Court**

For the Northern District of California

> District courts should consider, among
> other things, the degree of success
> obtained; frivolousness; motivation'
> objective unreasonableness (both in the
> factual and legal arguments in the case);
> and the need in particular circumstances
> to advance considerations of compensation
> and deterrence.

Historical Research v. Cabral, 80 F.3d 377, 379 n.1 (9th Cir.
1996). None of these factors weighs against awarding attorneys
fees in the present case.

To determine a reasonable attorney fee award, courts employ
the lodestar method. Morales v. City of San Rafael, 96 F.3d 359,
363 (9th Cir. 1996). "The 'lodestar' is calculated by multiplying
the number of hours the prevailing party reasonably expended on
the litigation by a reasonable hourly rate." Id. There is a
strong presumption that the lodestar figure constitutes reasonable
fees, and only in exceptional cases will adjustment of the
lodestar be appropriate. Pennsylvania v. Del. Valley Citizens'
Council for Clean Air, 478 U.S. 568, 564-65 (1986).

Attached to a declaration from Plaintiffs' counsel is an
exhibit containing a detailed breakdown of the time counsel spent
working on this case. See Chou Decl., Docket No. 30, Ex. A. The
exhibit states that counsel's rates in 2007 were $250 per hour for
court appearances, $225 per hour for office work, and $115 per
hour for travel. Id. at 3. For 2008, these rates went up to $250
per hour for both office and court work and $150 per hour for
travel. Id. Counsel then provides almost eight pages of
extremely detailed billing entries, with some entries containing
billing periods as small as .05 hours (3 minutes). See id. at 4.

These entries are equal to the amount that counsel, in his declaration, states as the total amount of fees--$16,497.

As noted above, the standard in this Circuit for determining reasonable attorneys' fees is based on the lodestar method. Therefore, rather than parse each billing entry provided by Plaintiffs' counsel in search of some indication of reasonableness, the Court will instead undertake an appropriate lodestar analysis and determine whether that result approximates counsel's own fee calculation.

In assessing a reasonable hourly rate, courts should consider the prevailing market rate in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. Blum v. Stenson, 465 U.S. 886, 895 (1984); Cancio v. Fin. Credit Network, No. 04-3755, 2005 WL 1629809, at *1 (N.D. Cal. July 6, 2005). Determination of prevailing market rates in certain communities is no easy task. Courts within this district have used different methods and reached different results. Compare Yahoo!, Inc. v. Net Games, Inc., 329 F. Supp. 2d 1179, 1192 (N.D. Cal. 2004) (employing complex formula to determine that average hourly rate in the San Francisco area around 2002 was $190 per hour), with Cancio, 2005 WL 1629809 at *3 (finding that precedent in the Northern District of California supported hourly rates in 2005 of $345 per hour and $435 per hour).

Determination of a reasonable hourly rate also depends on the skill, experience and reputation of the attorney as well as the complexity of the litigation. Neither factor benefits counsel in the present action. Counsel submitted no information regarding

United States District Court
For the Northern District of California

his skill, experience, or reputation.  In addition, the present

litigation is not complex.  Counsel drafted a relatively

straightforward Complaint, the problems with the fourth, fifth and

seventh causes of action notwithstanding, filed service of

process, and drafted and filed a total of four pages of briefing

for the motion for default judgment.  In light of these facts and

the relevant caselaw from this district, the Court concludes that

Plaintiff's hourly rates are not unreasonable.

        The second lodestar factor is the reasonable number of hours

counsel spent prosecuting the case.  If the requested number of

hours is greater than the number of hours reasonably competent

counsel would have billed, then the court should reduce the

requested number of hours accordingly.  Hensley v. Eckerhart, 461

U.S. 424, 434 (1983).  Given counsel's various hourly rates, it is

difficult to determine, without extensive and time-consuming

calculations, precisely how many hours counsel spent on each

general task.  As indicated in counsel's declaration, most of the

work done on this case was done at counsel's office in 2007.

Counsel's rate for this work was $225 per hour.  Thus, taking the

total amount sought by counsel, $16,497, and dividing this number

by $225, the Court estimates that counsel spent approximately 73

hours on this case.[3]

        The Court cannot conclude that 73 hours is an unreasonable

amount of time.  Other courts in this district have found similar

numbers of hours for attorney fee awards for trademark and

--------

    [3]  Counsel did not provide any totals for his time.

**United States District Court**
For the Northern District of California

1     copyright default judgments to be reasonable.  <u>See</u>, <u>e.g.</u>, <u>Yahoo!</u>,

2     329 F. Supp. 2d at 1189 (finding 74.4 hours to be reasonable for

3     trademark default judgment); <u>Jackson v. Sturkie</u>, 255 F. Supp. 2d

4     1096, 1105 (N.D. Cal. 2003) (holding that a total of almost 70

5     hours--57.5 for attorney and 10.3 for legal assistant--was

6     reasonable in copyright infringement default judgment action).

7          Finally, Plaintiffs seek costs of $2,005 for the filing fee

8     and for the costs of the process server.  As these costs were

9     reasonably incurred, the Court awards them in full.

10         For the reasons stated above, the Court AWARDS attorneys'

11    fees of $16,497 and costs of $2,005.

12

13    **V.    <u>CONCLUSION</u>**

14         For the foregoing reasons, the Court GRANTS default judgment

15    on Plaintiffs' first cause of action for trademark infringement in

16    violation of 15 U.S.C. §1114(1); second cause of action for unfair

17    competition and false designation of origin in violation of 15

18    U.S.C. § 1125(a); and sixth cause of action for copyright

19    infringement in violation of 17 U.S.C. § 101 <u>et</u> <u>seq.</u>

20         The Court DENIES default judgment on Plaintiffs' fourth and

21    seventh causes of action for unfair competition, deceptive

22    advertising and unfair trade practices under California Business

23    and Professions Code § 17200 <u>et</u> <u>seq.</u>, and fifth cause of action

24    for dilution and injury to business reputation under California

25    Business and Professions Code § 14330.

26         Plaintiffs' request for a permanent injunction is GRANTED.

27         It is hereby ORDERED that:

28                                        21

1   Defendants, their officers, agents, servants, employees and

2   all other persons acting in concert or participation with them,

3   are permanently enjoined from:

4       - Infringing Plaintiffs' trademark and/or copyright in

5   any manner; or

6       - Distributing, advertising, promoting, offering for

7   sale and/or selling any merchandise bearing or using any of

8   Plaintiffs' trademarks, or any colorable imitations thereof.

9       In addition, the Court GRANTS Plaintiffs' attorneys' fees in

10  the amount of $16,497 and costs in the amount of $2,005.

11

12

13  IT IS SO ORDERED.

14

15  Dated: June 17, 2008

16  _____

17  UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28
                                    22

**United States District Court**
For the Northern District of California